**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Matthew T. Theriault (SBN 244037)
mtheriault@clarksonlawfirm.com
Bahar Sodaify (SBN 289730)
bsodaify@clarksonlawfirm.com
Zachary T. Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
9255 Sunset Blvd., Suite 804
Los Angeles, CA 90069
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROCHELLE VARELA, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>WALMART, INC., an Arkansas Corporation,<br><br>Defendant. | Case No. 2:20-cv-04448-GW-KS<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CAL CIVIL CODE SECTION 1750, et seq.<br>2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, CAL BUSINESS & PROFESSIONS CODE SECTION 17500, et seq.<br>3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, CAL BUSINESS & PROFESSIONS CODE SECTION 17200, et seq.<br>4. BREACH OF EXPRESS WARRANTY<br>5. BREACH OF IMPLIED WARRANTY<br>6. VIOLATION OF MMWA, 15 USC SECTION 2301, et seq., WRITTEN WARRANTY<br>7. VIOLATION OF MMWA 15 USC SECTION 2301, et seq., IMPLIED WARRANTY OF MERCHANTABILITY<br>8. RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

CLARKSON LAW FIRM, P.C.<br>9255 Sunset Blvd., Suite 804<br>Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

1     Plaintiff Rochelle Varela, ("Plaintiff"), individually and on behalf of all others

2     similarly situated, brings this class action complaint against Walmart, Inc.

3     ("Defendant" or "Walmart"), and alleges as follows:

4                                    **INTRODUCTION**

5     1.     Walmart's "Vitamin E" skin oil (the "Product") is not what it claims to

6     be. Over 75% of the cosmetic Product is comprised of cheap cooking oils like

7     soybean oil, coconut oil, and lemon peel oil that do not provide the skin health and

8     cosmetic benefits of Vitamin E oil. Less than 20% of the Product is actually Vitamin

9     E oil. A true and correct representation of the Product's front label is set forth below.



23     2.     The average consumer spends only 13 seconds to make an in-store

24     purchasing decision.[1] That decision is heavily dependent upon product labeling.

27     ---
[1] http://www.nielsen.com/us/en/insights/news/2015/make-the-most-of-your-brands-20-second-window.html (citing the Ehrenberg-Bass Institute of Marketing Science's report "Shopping Takes Only Seconds…In-Store and Online").

3.      Based on its label, reasonable consumers believe that the Product is composed of primarily, if not exclusively, Vitamin E oil.

4.      Most consumers, including Plaintiff, are incapable of performing at the point of purchase, in 13 seconds, the college-level algebraic calculations necessary to determine that 24,000 IU of Vitamin E oil in a three-fluid ounce bottle translates to less than a paltry 25% Vitamin E oil.

5.      Plaintiff and other reasonable consumers do not interpret "24,000 IU" or "with keratin" to mean the Product contains "over 75% cheap cooking oils like soybean oil."

6.      Plaintiff and reasonable consumers do not interpret Vitamin E oil any differently than Vitamin E skin oil, especially where Vitamin E is in large, emphatic font compared to the words "skin oil" in tiny, understated font.

7.      Plaintiff and reasonable consumers would not have purchased the Product if they knew the Product was nothing more than a bottle of cheap cooking oils with only a squirt of Vitamin E oil in it.

## The Product's "24,000 IU" Label Is Meaningless to Consumers

8.      Reasonable American consumers are unaware of the meaning of "IU," which stands for "International Unit."

9.      International Unit is a measure of biological activity used by international scientists, and it is different for each substance.[2] The Product's "24,000 IU" label does not provide reasonable consumers with any meaningful insight as to the quantity of Vitamin E oil contained in the Product.

10.     In order to determine the quantity of Vitamin E oil contained in the Product, a consumer must perform complex college-level mathematical calculations

---

[2] U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE NAT'L INSTITUTES OF HEALTH OFFICE OF DIETARY SUPPLEMENTS, *Unit Conversions*, https://dietarysupplementdatabase.usda.nih.gov/Conversions.php (Feb. 28, 2019); U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE NAT'L INSTITUTES OF HEALTH OFFICE OF DIETARY SUPPLEMENTS, *Vitamin E*, https://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/#en1 (Feb. 28, 2020).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

to convert IUs into a meaningful measurement of quantity. The calculations below illustrate the mental gymnastics reasonable consumers must perform in order to convert IUs into milligrams (mg) and milliliters (ml).[3]

> 1 IU alpha-tocopherol = between .67 mg and .9 mg.
>
> 24000 IU (Spring Valley Vitamin E Skin Oil) = between 16080 mg and 21600 mg.
>
> 1 mg = .001 ml
>
> 16080 mg = 16.08 ml; 21600 = 21.60 ml.
>
> 16.08 ml / 89 ml (Spring Valley Vitamin E Skin Oil) = 18.1%.
>
> 21.60 ml/ 89 ml (Spring Valley Vitamin E Skin Oil) = 24.3%.

11.    It is unreasonable to expect consumers, who spend roughly 13 seconds on average to make an in-store purchase decision, to perform college-level calculations at the point of purchase in order to deduce the actual amount of Vitamin E oil in the Product. Instead, reasonable consumers rely on the Product labeling "Vitamin E" skin oil and believe that the Product is exclusively, or at least primarily, Vitamin E oil and would not know it contains between 18.1% and 24.3% Vitamin E.

## FDA Replaces "IU" with "mg" to Help Consumers Understand Vitamin E Quantity

12.    The U.S. Food and Drug Administration ("FDA") new labeling regulations for foods and dietary supplements, which took effect on January 1, 2020 (for companies with annual sales of $10 million or more) and will do so on January 1, 2021 (for smaller companies), require that Vitamin E be listed only in mg and not IUs.[4]

---

[3] See Footnote 2, *supra*.
[4] U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE NAT'L INSTITUTES OF HEALTH OFFICE OF DIETARY SUPPLEMENTS, *Vitamin E*, https://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/#en1 (Feb. 28, 2020); U.S. Food and Drug Administration. Food Labeling: Revision of the Nutrition and Supplement Facts Labels (2016), https://www.federalregister.gov/documents/2016/05/27/2016-11867/food-labeling-revision-of-the-nutrition-and-supplement-facts-labels; U.S. Food and Drug

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

13.    The new FDA guidelines require that Vitamin E content be determined based on the source of Vitamin E and that it be reported as mg alpha-tocopherol rather than in IU.[5]

14.    The FDA explained that the purpose of the regulation is to improve how information is presented to consumers. [6] The FDA has replaced IU with mg to help consumer understanding of the amount of Vitamin E in products because "gram weight is a more precise measurement." *Id.*

15.    The FDA explained that the regulation change is based in part on "new information regarding consumer understanding of the label and consumption patterns." *Id.*

16.    Although the FDA regulation applies to foods and dietary supplements, the change from IU to mg further signifies how IU does not provide meaningful information to reasonable consumers as to the quantity of Vitamin E. However, even if the Product disclosed the number of milligrams, reasonable consumers would still be deceived because they would not expect a cosmetic product labeled "Vitamin E" skin oil, to contain less than 20% Vitamin E oil and over 75% cheap, cooking oils.

## **Accurate Product Labels in the Marketplace Help**
## **Dispel Consumer Deception**

17.    When a product contains several oils, the industry trend is to use the word "blend" or list the oils on the front of the product package to ensure market

---

Administration. Food Labeling: Revision of the Nutrition and Supplement Facts Labels and Serving Sizes of Foods That Can Reasonably Be Consumed at One Eating Occasion; Dual-Column Labeling; Updating, Modifying, and Establishing Certain Reference Amounts Customarily Consumed; Serving Size for Breath Mints; and Technical Amendments; Proposed Extension of Compliance Dates (2017), https://www.federalregister.gov/documents/2017/10/02/2017-21019/food-labeling-revision-of-the-nutrition-and-supplement-facts-labels-and-serving-sizes-of-foods-that
[5] U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE NAT'L INSTITUTES OF HEALTH OFFICE OF DIETARY SUPPLEMENTS, *Unit Conversions*, https://dietarysupplementdatabase.usda.nih.gov/Conversions.php (Feb. 28, 2019);
[6] U.S. Food and Drug Administration. Food Labeling: Revision of the Nutrition and Supplement Facts Labels (2016), https://www.federalregister.gov/documents/2016/05/27/2016-11867/food-labeling-revision-of-the-nutrition-and-supplement-facts-labels

transparency and avoid consumer confusion. For example, Trader Joe's sells a Vitamin E oil product comprised mostly of soybean oil and labels it as "Vitamin E Oil Blend." Pixi sells a Rose Oil product that contains Sweet Almond Oil and Jojoba oil and labels it "Rose Oil Blend." Likewise, Derma-E manufactures an Argan Oil product that contains Kukui seed and Jojoba oil and labels it "Argan Oil Blend." True and correct representations of the comparator products are set forth below.

  

18.    Walmart could easily increase consumer transparency and eliminate consumer deception by modifying the Product's label. For example, Walmart could conspicuously add to the front label the word "blend" to inform consumers that the Product is a blend of Vitamin E oil and other oils (e.g., soybean oil, coconut oil, and lemon peel oil). Instead, Walmart refuses to follow the industry trend and instead tries to leverage its refusal to obtain an unfair competitive advantage over other Vitamin E oil blend manufacturers who play by the rules.

19.    Unlike Walmart, other Vitamin E oil manufacturers which disclose the number of IUs in a product contain *only* Vitamin E oil. For example, Nature's Plus'

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

Vitamin E Oil is labeled 14,000 IU and contains *only* Vitamin E oil. Sundown Naturals Vitamin E Oil is labeled 70,000 IU and contains *only* Vitamin E oil. CVS' Beauty 360 Pure Vitamin E Moisturizing Oil is labeled 28,000 IU and contains *only* Vitamin E oil. In contrast, Walmart's Vitamin E skin oil is labeled 24,000 IU and contains less than 25% Vitamin E oil. True and correct representations of the comparator products are set forth below.

  

20.    The Product label deceives reasonable consumers into believing that the Product is exclusively, or at least primarily, Vitamin E oil, when in fact it is less than 25% Vitamin E oil and more than 75% cheap, cooking oils. Plaintiff relied on the Product label to believe that the Product was exclusively, or at least primarily, Vitamin E oil in making their purchasing decision.

21.    Defendant violates statutes enacted in each of the fifty states and the District of Columbia that are designed to protect consumers against unfair, deceptive, fraudulent, unconscionable trade and business practices, and false advertising. These statutes include:

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*1)*   Alabama Deceptive Trade Practices Act, Ala. Statues Ann. § 8-19-1, *et seq.*;

*2)*   Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.*;

*3)*   Arizona Consumer Fraud Act, Arizona Revised Statutes, § 44-1521, *et seq.*;

*4)*   Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.*;

*5)*   California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.*;

*6)*   Colorado Consumer Protection Act, Colo. Rev. Stat. § 6-1-101, *et seq.*;

*7)*   Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.*;

*8)*   Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.*;

*9)*   District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.*;

*10)*  Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.*;

*11)*  Georgia Fair Business Practices Act, § 10-1-390 *et seq.*;

*12)*  Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statutes § 480-1, *et seq.*, and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.*;

*13)*  Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.*;

*14)*  Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS Section 505/1, *et seq.*;

*15)*  Indiana Deceptive Consumer Sales Act, Indiana Code Ann. § 24-5-0.5-0.1, *et seq.*;

*16)*  Iowa Consumer Fraud Act, Iowa Code § 714.16, *et seq.*;

*17)*  Kansas Consumer Protection Act, Kan. Stat. Ann § 50 626, *et seq.*;

*18)*  Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. § 367.110, *et seq.*, and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann § 365.020, *et seq.*;

*19)*  Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1401, *et seq.*;

*20)*  Maine Unfair Trade Practices Act, Me. Rev. Stat. tit. 5, § 205A, *et seq.*, and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. tit. 10, § 1211, *et seq.*;

*21)*  Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.*;

*22)*  Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)*  Michigan Consumer Protection Act, § 445.901, *et seq.*;

*24)*  Minnesota Prevention of Consumer Fraud Act, Minn. Stat § 325F.68, *et seq.*, and Minn. Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.*;

7

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. § 75-24-1, *et seq.*;

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.*;

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code § 30-14-101, *et seq.*;

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.*, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.*;

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. § 598.0903, *et seq.*;

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq.*;

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8 1, *et seq.*;

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57 12 1, *et seq.*;

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law § 349, *et seq.*, and New York False Advertising, N.Y. Gen. Bus. Law § 350, *et seq.*;

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code § 51-15-01, *et seq.*;

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes § 75-1, *et seq.*;

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. § 4165.01. *et seq.*;

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.*;

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.*;

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § 201-1, *et seq.*;

*40)* Rhode Island Unfair Trade Practices and Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.*;

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.*;

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws § 37-24-1, *et seq.*;

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated § 47-25-101, *et seq.*;

*44)* Texas Stat. Ann. § 17.41, et seq., Texas Deceptive Trade Practices Act, *et seq.*;

*45)* Utah Unfair Practices Act, Utah Code Ann. § 13-5-1, *et seq.*;

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § 2451, *et seq.*;

*47)* Virginia Consumer Protection Act, Virginia Code Ann. § 59.1-196, *et seq.*;

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.*;

*49)* West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.*;

*50)* Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100. 18, *et seq.*;

*51)* Wyoming Consumer Protection Act, Wyoming Stat. Ann. § 40-12-101, *et seq.*

**PARTIES**

22.     Plaintiff is, and at all times relevant hereto was, a citizen of California residing in the County of Los Angeles in this District. Plaintiff purchased the Product at a Walmart store in Los Angeles, California in or about December 2019 for about $7.00. In making her purchase decision, Plaintiff relied upon Walmart's Vitamin E skin oil label claim prominently labeled in large black lettering with a large capital "E" singled out on the front of the bottle. This label was prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product. Had Plaintiff known that the cosmetic Product was mostly comprised of cooking oils instead of Vitamin E oil, then she would not have purchased the Product.

23.     Walmart, Inc. is a corporation headquartered in Arkansas. Walmart maintains its principal place of business at 708 SW 8th St., Bentonville, AR 72716. Walmart offers the Products for sale at its stores and retailers as well as through the internet, throughout the nation, including the State of California. Walmart, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Walmart is one of the owners and distributors of the Product and is one of the companies that created and/or authorized the false, misleading, and deceptive advertisements and packaging for the Product.

**JURISDICTION AND VENUE**

24.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 of the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

9

25.     Pursuant to 28 U.S.C. § 1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California, resides in this District, and her purchases of the Product were made in this District. Moreover, Defendant receives substantial compensation from sales in this District, and Defendant made numerous misrepresentations which had a substantial effect in this District, including, but not limited to, labeling, packaging, and internet advertisements, among other advertising.

26.     Defendant is subject to personal jurisdiction in California based upon sufficient minimal contacts which exist between Defendant and California. Defendant is authorized to do and doing business in California.

## FACTUAL ALLEGATIONS

27.     Walmart is a multi-billion-dollar[7] multinational supermarket chain.

28.     Consumers expect to receive truthfully labeled goods from a well-known, reliable source. Yet, Walmart's Vitamin E skin oil does not live up to consumers' expectations.

29.     Walmart prominently displays Vitamin E skin oil claim on the front of each bottle of the Product.  "Vitamin E" label claim is written in large black lettering with a capital "E" largely singled out on the front of each and every bottle.  Soybean oil is starkly omitted from the front label of the packaging despite being the primary oil. Walmart tellingly does not label the Product "Soybean oil with Vitamin E" because no one would buy it if they actually knew the Product was comprised of over 75% cooking oils and less than 25% Vitamin E oil.

30.     The net impression of Walmart's labeling and advertising is that the Product is made exclusively, or at least primarily, of Vitamin E oil

---

[7] Forbes (2018-11-30). "A Closer Look at Walmart's Valuation." Forbes. https://www.forbes.com/sites/greatspeculations/2018/11/30/a-closer-look-at-walmarts-valuation/#3d308c674916 (Last visited May 15, 2020).

31.    Consumers purchase the Product with the reasonable belief that they are receiving exclusively or at least primarily Vitamin E oil. Indeed, consumers seek this cosmetic oil for its specific cosmetic qualities and health benefits.

32.    "Vitamin E" is the collective name for a group of fat-soluble compounds with distinctive antioxidant activities.[8] Vitamin E, also known as "D-Alpha-Tocopherol," is the most important lipid soluble antioxidant.[9] The National Institutes of Health Office of Dietary Supplements explains that Vitamin E is an antioxidant that helps protect cells from damage caused by free radicals, a reactive oxygen species formed when the body converts food to energy.[10] Additionally, damaged cells caused by radicals may contribute to cardiovascular disease and cancer.[11] People can be exposed to free radicals from environmental exposures such as pollution and ultraviolent radiation.[12] Moreover, Vitamin E oil blocks the free radicals from the human body which also play a major role in the aging process. Vitamin E oil is a powerful fat-soluble antioxidant that can help rejuvenate human skin and overall health.

33.    Soybean oil, however, does not possess the same qualities as Vitamin E oil. It is a top allergen.[13] Soybean allergens are found in protein fraction, most of which is removed in the "soy lecithin" manufacturing process. *Id.* The soy lecithin

---

[8] U.S. DEP'T OF HEALTH AND HUMAN SERVICES, THE NAT'L INSTITUTES OF HEALTH OFFICE OF DIETARY SUPPLEMENTS, *Vitamin E*, https://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional/#en1 (Nov. 3, 2016) (citing Maurice E. Shils et al., MODERN NUTRITION IN HEALTH AND DISEASE 396-411 (10th ed. 2006)).
[9] *See* Lester Packer et al., Molecular Mechanisms of Protective Effects of Vitamin E in Atherosclerosis, THE JOURNAL OF NUTRITION (April 16, 2000) http://jn.nutrition.org/content/131/2/369S.full.pdf.
[10] *Supra* U.S. DEP'T OF HEALTH AND HUMAN SERVICES.
[11] *Supra* U.S. DEP'T OF HEALTH AND HUMAN SERVICES (citing Hans Verhagen et al., *The State of Antioxidant Affairs*, NUTRITION TODAY, November/December 2006, Vol. 41, Issue 6 at 244-50).
[12] *Supra* U.S. DEP'T OF HEALTH AND HUMAN SERVICES.
[13] Food Allergy Research & Resource Program University Of Nebraska, Allergenicity of Soybean Lecithin (April 12, 2017), https://farrp.unl.edu/documents/members/expert-opinions/2017_0412_Expert%20Soy%20Lecithin.pdf.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

still contains trace levels of soy proteins that have been found to include soy allergens. *Id.*

34.    Soybean oil is extracted from soybean seeds using harsh chemicals such as hexane.[14] Because of the unsafe chemical process by which soybean oil is extracted from soybeans and its lower quality nature, soybean oil is not nearly as healthy as Vitamin E oil.

35.    Plaintiff and other consumers purchased the Product to obtain the benefits and qualities of Vitamin E oil, not of other oils like soybean oil.

36.    Consumers have lodged numerous reviews on Walmart's website and third-party sites, such as Amazon.com demonstrating that they were misled and deceived by the Product's labeling and advertising that the Product is Vitamin E skin oil and not a "blend" of other oils. A true and correct representative sample of the consumer complaints are set forth below.

37.    For example, one consumer on Walmart's official website complains, "*I was disappointed with the product when it arrived believing it to be pure vitamin e oil.* Soybean oil is the first ingredient listed, which is not an oil I use for many reasons. I should have looked at the ingredient label more closely. My mistake."



///

///

_____
[14] National Center For Biotechnology Information, Pubchem Compound Database, https://pubchem.ncbi.nlm.nih.gov/compound/8058 (Last visited May 15, 2020).

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

38.    A consumer on Amazon.com states, "*Has soy bean oil in it.*"



39.    Consumers complained on Amazon.com about the ingredients in the Product, stating, "Well, thought I was buying Vitamin E oil, but received it today and it has two other oils in it -- one of them being coconut oil. I HATE the smell of coconut. *Nowhere did it say this was a blend -- be aware!* I'll be returning it, so can't comment on much else. Would have preferred to know this up front."

40.    Another consumer stated, "The coconut oil and soybean oil in it makes it useless. it made my blemishes worse." And another consumer found that "When soy is the main ingredient and vitamin E oil it isn't Vitamin E oil. *The label is very misleading*. My fault, should have done more research."



CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

41.     Some consumers complained that the Product was not what they
expected it to be, "As seen in the picture, the bottle is dark. The product that I
received was not dark Vitamin E oil. Maybe it was a mistake on my part, but *if you
are looking for pure dark vitamin E oil then DO NOT buy this items*," and "*I thought
this was pure Vitamin E oil but it isn't.* It's mixed with a few other oils including
coconut oil, which I'm not sure how pure the quality of that is …But I have a bald
spot on my lashline and purchased this for growth. We'll see how it does considering
it's not real Vitamin E oil. And for that reason along with the price, I would not buy
it again."



42.     Plaintiff and the Class made their purchasing decisions in reliance upon
Walmart's Product label and advertised claims that that Product was exclusively or
at least primarily Vitamin E oil.

43.     The Product's "24,000 IU" label disclosure did not negate Plaintiff's and
other consumers' reasonable belief as to exclusive or primary existence of Vitamin E
oil in the Product because Plaintiff and reasonable consumers do not understand IU
as a meaningful measurement of quantity. Plaintiff and consumers did not know that
"24,000 IU" meant there is less than 25% Vitamin E oil in the Product; otherwise,
they would have not purchased it.

44.    Plaintiff and other reasonable consumers do not interpret "24,000 IU" or "with keratin" to mean the Product is 75% not Vitamin E oil.

45.    Plaintiff and reasonable consumers do not interpret Vitamin E oil any differently than Vitamin E skin oil.

46.    Plaintiff purchased Walmart's Spring Valley Vitamin E Skin Oil from a Walmart in Los Angeles in 2019-2020.  Plaintiff paid approximately $7.00 for the Product.

47.    Plaintiff reasonably and detrimentally relied upon the Product's front label indicating that the Product was Vitamin E skin oil.

48.    Plaintiff would not have purchased the Product had she known the Product was less than 25% Vitamin E oil.

49.    Walmart's conduct threatens California consumers by using deceptive and misleading labels. Walmart's conduct also threatens other companies, large and small, who "play by the rules." Walmart's conduct stifles competition, has a negative impact on the marketplace, and reduces consumer choice.

50.    There is no practical reason for the false or misleading labeling and advertising of the Product, other than to mislead consumers as to the actual ingredients of the Product being purchased by consumers while simultaneously providing Walmart with a financial windfall as a result of money saved from lower supply costs.

51.    Plaintiff makes the allegations herein upon personal knowledge as to herself and her own acts and experiences, and as to all other matters, upon information and belief, including investigation conducted by her attorneys.

52.    Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices.

53.    Plaintiff also seek damages, and all other relief available under the implicated statutes.

///

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

## **CLASS ALLEGATIONS**

54.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated. The Class, which Plaintiff seeks to represent, comprises:

> All persons who purchased the Product in the United States [or, alternatively, the State of California,] for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present (the "Nationwide Class" and "California Subclass").

This definition may be further defined or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

55.     There exist common questions of law and fact involved affecting the parties to be represented, which predominate over questions that may affect individual Class Members. Common questions of law and fact include, but are not limited to, the following:

a.     Whether Defendant's conduct constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

b.     Whether Defendant used deceptive representations in connection with the sale of the Product in violation of Civil Code section 1750, *et seq.*;

c.     Whether Defendant represented the Product has characteristics or quantities that it does not have in violation of Civil Code section 1750, *et seq.*;

d.     Whether Defendant advertised the Product with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

e.     Whether Defendant's labeling and advertising of the Product is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

f.     Whether Defendant knew or by the exercise of reasonable care should have known their labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

g.    Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

h.    Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.    Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.    Whether Defendant's conduct constitutes a breach of express warranty;

k.    Whether Defendant's conduct constitutes a breach of implied warranty;

l.    Whether Defendant's conduct constitutes a violation of the Magnuson-Moss Warranty Act written warranty provision within the meaning  of 15 USC Section 2301, *et seq.*;

m.    Whether Defendant's conduct constitutes a violation of the Magnuson-Moss Warranty Act implied warranty of merchantability provision within the meaning of 15 USC Section 2301, *et seq.*;

n.    Whether Defendant was unjustly enriched by its deceptive conduct;

o.    Whether Plaintiff and the Class paid more money for the Product than the benefit they actually received; and

p.    How much money of a price premium paid for the Product as a result of Defendant's deceptive conduct.

56.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff will fairly and adequately represent and protect the interests of the Class.  Plaintiff has retained competent and experienced counsel in class action and other complex litigation.

57.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations and material omissions. Plaintiff

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

purchased the Product under the false belief that the Product contained exclusively or at least primarily Vitamin E oil. Plaintiff relied upon Defendant's product label and would not have purchased the Product if she had known that the Product did not comprise exclusively or at least primarily of Vitamin E oil as labeled, and that the Product was actually comprised primarily of soybean oil and other cooking oils. Plaintiff might want to purchase the Product again in the future if she could be sure that the Product was truthfully labeled.

58.    A class action is superior to other available methods for fair and efficient adjudication of this controversy. The expense and burden of individual litigation would make it impracticable or impossible for the Class to prosecute their claims individually.

59.    The trial and litigation of Plaintiff's claims are manageable. Individual litigation of the legal and factual issues raised by Defendant's conduct would increase delay and expense to all parties and the court system.  The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale, and comprehensive supervision by a single court.

60.    Defendant has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief and/or corresponding declaratory relief appropriate with respect to the Class as a whole. The prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

61.    Absent a class action, Defendant will likely retain the benefits of its wrongdoing.  Because of the small size of the individual Class members' claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.  Absent a representative action, the Class will continue to

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

suffer losses and Defendant will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains.

## COUNT ONE

**Violation of California Consumers Legal Remedies Act,**

**California Civil Code Section 1750,** *et seq.*

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent California consumer protection law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)*

62.    Plaintiff repeats and realleges all allegations of the previous paragraphs, and incorporates the same as if set forth herein at length.

63.    Plaintiff brings this cause of action pursuant to Civil Code section 1750, *et seq.*, the Consumers Legal Remedies Act ("CLRA"), on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product.

64.    The Class consists of thousands of persons, the joinder of whom is impracticable.

65.    There are questions of law and fact common to the Class, which questions are substantially similar and predominate over questions affecting the individual Class members, as set forth herein.

66.    The CLRA prohibits certain "unfair methods of competition and unfair or deceptive acts or practices" in connection with a sale of goods.

67.    The practices described herein, specifically Defendant's packaging,

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

19

advertising, and sale of the Product, were intended to result and did result in the sale of the Product to the consuming public and violated and continue to violate the CLRA by (1) using deceptive representations in connection with the Product; and (2) advertising and packaging the Product with intent not to sell them as advertised.

68.     Defendant fraudulently deceived Plaintiff and the Class by misrepresenting the Product as having characteristics which it does not have, e.g., advertising the Product in such a way to represent it as containing exclusively or at least primarily Vitamin E oil when it contains less than 25%, and over 75% other *cooking* oils. In doing so, Defendant misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

69.     Defendant fraudulently deceived Plaintiff and the Class by labeling and advertising the Product with intent not to sell as advertised. Specifically, Defendant intentionally labeled and misrepresented the Product as being exclusively or at least primarily Vitamin E skin oil, and deliberately omitted any mention of soybean oil, coconut oil, or lemon peel oil from the front label. In doing so, Defendant intentionally misrepresented and concealed material facts from Plaintiff and the Class. Said misrepresentations and concealment were done with the intention of deceiving Plaintiff and the Class and depriving them of their legal rights and money.

70.     Defendant knew or should have known, through the exercise of reasonable care, that the Product's labeling and advertising were misleading.

71.     Defendant's actions as described herein were done with conscious disregard of Plaintiff's rights, and Defendant was wanton and malicious in its concealment of the same.

72.     Defendant's labeling and advertising of the Product was a material factor in Plaintiff's and the Class's decisions to purchase the Product. Based on

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

Defendant's labeling and advertising of the Product, Plaintiff and the Class reasonably believed that they were purchasing a bottle that contained exclusively or at least primarily Vitamin E oil instead of the Product containing primarily soybean oil. Had they known the truth of the matter, Plaintiff and the Class would not have purchased the Product.

73.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's unfair, unlawful, and fraudulent conduct. Specifically, Plaintiff paid for a bottle of oil that was different from what she was reasonably expecting to receive when she decided to make her purchase. Plaintiff would not have purchased the Product had she known the Product contained primarily soybean oil.  Plaintiff might want to purchase the Product again in the future if she could be sure that the Product was truthfully labeled.

74.    Defendant's false and misleading labeling and advertising should be enjoined due to its false, misleading, and/or deceptive nature.

75.    By letter dated March 23, 2020, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782(a).

76.    Pursuant to Section 1780(a) of the Act, Plaintiff primarily seeks injunctive relief in the form of an order enjoining the above-described wrongful acts and practices to ensure statutory compliance, including, but not limited to, an order enjoining Defendant from continuing to make the label and advertising claims challenged herein. Plaintiff also seeks restitution.

77.    Plaintiff shall be irreparably harmed if such an order is not granted.

## COUNT TWO

### Violation of California False Advertising Law,

### Business & Professions Code Section 17500, *et seq.*

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

FIRST AMENDED CLASS ACTION COMPLAINT

*the extent California consumer protection law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)*

78.     Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, and incorporates the same as if set forth herein at length.

79.     Plaintiff brings this cause of action pursuant to Business and Professions Code section 17500, *et seq.*, on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product.

80.     California's False Advertising Law, California Business and Professions Code section 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, in any advertising device or in any other manner or means whatever, including over the Internet, any statement, concerning personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

81.     Defendant knowingly disseminated misleading claims regarding the Product as a means to mislead the public about the amount of said ingredient in the Product.

82.     Defendant controlled the labeling and advertising of the Product and knew or should have known, through the exercise of reasonable care that its representations and omissions about the ingredients of the Product were untrue, deceptive and misleading.

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

83.    Defendant's action of displaying misleading claims and omissions about the ingredients of the Product in prominent type face on each Product front label is likely to deceive the general public.

84.    Defendant's actions in violation of Section 17500 were false and misleading such that the general public is and was likely to be deceived.

85.    Pursuant to Business and Professions Code section 17535, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of falsely advertising that the Product as Vitamin E skin oil and deliberately omitting that the cosmetic Product is more than 75% *cooking* oils.

86.    Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations. Plaintiff purchased the Product in reliance upon the claims and omissions by Defendant that the Product is primarily or exclusively Vitamin E oil as represented by Defendant's labeling and advertising. Plaintiff would not have purchased the Product if she had known that the claims and advertising as described herein were false and misleading. Plaintiff might want to purchase the Product again in the future if she could be sure that the Product was truthfully labeled.

87.    Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices to ensure statutory compliance. Plaintiff also seeks restitution.

## COUNT THREE

**Violation of California Unfair Competition Law,**

**Business & Professions Code Section 17200, *et seq.***

***(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent California consumer protection law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)***

88.    Plaintiff repeats and realleges the allegations set forth above, and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

incorporates the same as if set forth herein at length.

89.     Plaintiff brings this cause of action pursuant to Business and Professions Code section 17200, *et seq*., on her own behalf and on behalf of all other persons similarly situated. Plaintiff seeks to represent a Class consisting of "All persons who purchased the Product in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." Excluded from the Class are Defendant's officers, directors, and employees, and any individual who received remuneration from Defendant in connection with that individual's use or endorsement of the Product.

90.     Defendant in its advertising and packaging of the Product made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Product, specifically, labeling the Product Vitamin E skin oil when it is over 75% *not* Vitamin E oil. Such claims and omissions appear on the label and packaging of the Product which are sold at Defendant's stores nationwide, point-of-purchase displays, as well as Defendant's website, and other retailers' advertisements which have adopted Defendant's advertisements.

91.     Defendant's labeling and advertising of the Product led and continues to lead reasonable consumers, including Plaintiff, to believe that the Product contains exclusively or at least primarily Vitamin E oil.

92.     Defendant does not have any reasonable basis for the claims about the Product made in Defendant's advertising and on Defendant' label because the Product contains less than 25% Vitamin E oil.

93.     The misrepresentations by Defendant alleged above constitute unfair, unlawful, and fraudulent business practices within the meaning of California Business and Professions Code Section 17200.

94.     In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

which are not as represented in any manner constitutes unfair competition, unfair,

deceptive, untrue or misleading advertising, and an unlawful business practice

within the meaning of Business and Professions Code Sections 17200 and 17531,

which advertisements have deceived and are likely to deceive the consuming

public, in violation of Business and Professions Code Section 17200.

95.    Defendant failed to avail itself of reasonably available, lawful

alternatives to further its legitimate business interests.

96.    All of the conduct alleged herein occurs and continues to occur in

Defendant's business.  Defendant's wrongful conduct is part of a pattern, practice,

and/or generalized course of conduct, which will continue on a daily basis until

Defendant voluntarily alters its conduct or it is otherwise ordered to do so.

97.    Pursuant to Business and Professions Code Sections 17203 and 17535,

Plaintiff and the members of the Class seek an order of this Court enjoining

Defendant from continuing to engage, use, or employ its practice of labeling and

advertising the sale and use of the Product.

98.    Plaintiff and the Class have suffered injury in fact and have lost money

or property as a result of and in reliance upon Defendant's false representations.

99.    Plaintiff would not have purchased the Product but for the

representations by Defendant about the Product as containing exclusively or at least

primarily Vitamin E oil.

100.   The UCL prohibits unfair competition and provides, in pertinent part,

that "unfair competition shall mean and include unlawful, unfair or fraudulent

business practices and unfair, deceptive, untrue or misleading advertising."  Cal.

Bus & Prof. Code § 17200.

## A.   "Unfair" Prong

101.   Under California's False Advertising Law, Cal. Bus. & Prof. Code

Section 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes

outweighs any benefits provided to consumers and the injury is one that the

consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

102.    Defendant's action of labeling and advertising the Product as if it contains exclusively or primarily Vitamin E oil when it does not, does not confer any benefit to consumers.

103.    Defendant's action of labeling and advertising the Product as if it contains as if it contains exclusively or at least primarily Vitamin E oil when it does not, causes injuries to consumers, who do not receive Vitamin E as they reasonably expected.

104.    Defendant's action of labeling and advertising the Product as if it contains as if it contains exclusively or primarily Vitamin E oil when it does not, causes injuries to consumers, who end up paying for the Product thinking it contains exclusively or at least primarily Vitamin E oil.

105.    Defendant unfairly and fraudulently represented to Plaintiff and the Class, based on the Product labeling and advertising, that the Product contains exclusively or at least primarily Vitamin E oil.

106.    Plaintiff and the Class do not have a duty to inspect the ingredient list or investigate beyond the front of the Product packaging as to whether the Product includes other oils or ingredients.

107.    Even if Plaintiff and the Class saw the ingredient list, they still would not be able to reasonably discern that the Product only contains less than 25% Vitamin E oil.

108.    Plaintiff and the Class reasonably relied on the Product labeling and advertising to believe the Product contains exclusively or primarily Vitamin E oil.

109.    Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and advertising of the Product as if it contains exclusively or at least primarily Vitamin E oil.

110.    The injuries caused by Defendant's activity of deceptive labeling and

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

advertising of the Product as if it contains exclusively or at least primarily Vitamin E oil outweighs any benefits.

111.    Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200.  In so doing, they "weigh the utility of the Defendants' conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

112.    Defendant's conduct of deceptive labeling and advertising of the Product as if it contains exclusively or at least primarily, Vitamin E oil has no utility and financially harms purchasers.  Thus, any utility of Defendant's conduct is vastly outweighed by the gravity of harm to consumers.

113.    Some courts hold that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

114.    Defendant's conduct not only threatens consumers, but stifles competition from businesses large and small who "play by the rules." If Defendant's conduct were permitted to continue unchecked, Defendant would obtain an unfair competitive advantage over competitors who follow the law.

115.    Defendant's labeling and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unfair conduct.

116.    Defendant knew or should have known of this unfair conduct.

117.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

118.    There were reasonably available alternatives to further Defendant's legitimate business interests other than the conduct described herein.  For example, and without limitation, Defendant could label the Product "Vitamin E Skin Oil

27

FIRST AMENDED CLASS ACTION COMPLAINT

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

Blend."

119.   All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on approximately thousands of occasions daily.

120.   The Product labeling and advertising as alleged herein are fraudulent misrepresentations that would deceive innocent consumers.

121.   Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unfair business practices.

122.   Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's unfair conduct. Plaintiff paid an unwarranted premium for the Product. Specifically, Plaintiff paid for Vitamin E oil never received.  Plaintiff would not have purchased the Product, or would have paid significantly less for the Product, if she had known that the Product was not exclusively or at least primarily Vitamin E oil. Plaintiff might want to purchase the Product again in the future if she could be sure that the Product was truthfully labeled. Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices to ensure statutory compliance. Plaintiff also seeks restitution.

### B.   "Fraudulent" Prong

123.   California Business and Professions Code Section 17200, *et seq.,* prohibits fraudulent conduct, defined as conduct that is likely to deceive members of the public. A business practice is "fraudulent" if it actually deceives members of the consuming public.

124.   Members of the public base their purchasing decisions on the Product's labeling and advertising.

125.   Defendant's conduct of labeling the Product as Vitamin E skin oil is likely to deceive members of the public to think the Product is exclusively or at least

primarily Vitamin E oil.

126.   Defendant's labeling and advertising of the Product as though it contains exclusively or at least primarily Vitamin E oil, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes fraudulent conduct.

127.   Defendant knew or should have known of their fraudulent conduct.

128.   As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

129.   Defendant fraudulently represented to Plaintiff and the Class, based on the labeling and advertising of the Product, that the Product is exclusively or primarily Vitamin E oil.

130.   Plaintiff and the Class do not have a duty to investigate the ingredient list on the back of the Product or determine what "24,000 IU" equates to.

131.   Even if Plaintiff and the Class saw the ingredient list, they still would not be able to reasonably discern that the Product includes less than 25% Vitamin E oil.

132.   Plaintiff and the Class reasonably relied on the Product labeling and advertising to believe the Product contains exclusively or at least primarily Vitamin E oil.

133.   There were reasonably available alternative courses of conduct to further Defendant's legitimate business interests other than the conduct described herein. For example, and without limitation, Defendant could have labeled the Product as "Vitamin E Skin Oil Blend."

134.   All of the conduct alleged herein occurs and continues to occur in Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

135.   The Product labeling and advertising as alleged herein are fraudulent misrepresentations that would deceive innocent consumers.

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

136.    Pursuant to Business and Professions Code Sections 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their fraudulent business practices. Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices. Plaintiff also seeks restitution.

137.    Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's unlawful, unfair, and fraudulent conduct.  Plaintiff paid an unwarranted premium for the Product. Plaintiff would not have purchased the Product, or would have paid significantly less for the Product, if she had known that the Product contained less than 25% Vitamin E oil.

### C.    "Unlawful" Prong

138.    California Business and Professions Code Section 17200, *et seq.*, identifies violations of any state or federal law as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

139.    Defendant's labeling and advertising of the Product violates California Civil Code Section 1750, *et. seq.* and California Business and Professions Code Section 17500, *et. seq.*

140.    Defendant's labeling and advertising of the Product, as alleged in the preceding paragraphs, is false, deceptive, misleading, and unreasonable and constitutes unlawful conduct.

141.    Defendant knew or should have known of its unlawful conduct.

142.    As alleged in the preceding paragraphs, the misrepresentations by Defendant detailed above constitute an unlawful business practice within the meaning of California Business and Professions Code section 17200.

143.    There were reasonably available alternative courses of conduct to further Defendant's legitimate business interests other than the conduct described here. For example, Defendant could have labeled the Product "Vitamin E Skin Oil Blend."

144.    All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

145.    Pursuant to Business and Professions Code section 17203, Plaintiff and the Class seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its unlawful business practices.

146.    Plaintiff and the Class have suffered injury-in-fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff paid an unwarranted premium for the Product.  Plaintiff and consumers would not have purchased the Product, or would have paid significantly less for the Product, if they had known that the Product was less than 25% Vitamin E oil.

147.    Plaintiff's primary litigation objective is to enjoin Defendant's unlawful labeling practices to ensure statutory compliance. Plaintiff also seeks restitution.

## COUNT FOUR

### Breach of Express Warranty

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent California common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)*

148.    Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

149.    Defendant made an express warranty to Plaintiff and members of the Class that the Product was Vitamin E skin oil.

150.    The "Vitamin E skin oil" express warranty made to Plaintiff and the Class appears on every package of the Product. The "Vitamin E skin oil" labeling of the Product describes the Product, and specifically relates to the goods being purchased, and became the basis of the bargain.

151.    Plaintiff and the Class purchased the Product with the expectation that

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

31

they conformed to the express "Vitamin E skin oil" warranty that was made on the Product's packaging.

152. Defendant breached the express warranty made to Plaintiff and Class members by failing to supply goods that conformed to the "Vitamin E skin oil" warranty. As a result, Plaintiff and members of the Class suffered injury and deserve to be compensated for the damages they suffered.

153. Plaintiff and the members of the Class paid money for the Product. However, Plaintiff and Class members did not obtain the full value of the advertised Product. If Plaintiff and other Class members had known of the true nature of the Product, they would not have purchased the Product, would have purchased less of the Product, or would not have been willing to pay the premium price associated with promise of "Vitamin E skin oil."

154. Plaintiff and the Class are therefore entitled to recover all available remedies for said breach.

## COUNT FIVE

### Breach of Implied Warranty

*(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent California common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)*

155. Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

156. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

157. Defendant is a merchant with respect to the Product, as it manufactures, distributes, and sells the Product nationwide.

158. In order to be merchantable, goods must conform to the promises or

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

affirmations of fact made on the container or labeling.

159.   Defendant breached the implied warranty of merchantability to Plaintiff and the Class in that the labels of the Product promised and affirmed that the Product was composed of primarily, if not exclusively, "Vitamin E" oil. Contrary to the promise and affirmation of fact, the Product contains less than 25% vitamin E oil.

160.   As a result of Defendant's conduct, Plaintiff and the Class did not receive merchantable goods as impliedly warranted by Defendant.

161.   Defendant did not exclude or modify the Product's implied warranty of merchantability.

162.   As a proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Class incurred damages. Plaintiff and members of the Class were damaged as a result of Defendant's failure to comply with its obligations under the implied warranty, since Plaintiff and members of the Class paid for a product that did not have the promised quality and nature, did not receive the "Vitamin E" that they bargained for, paid a premium for the Product when they could have instead purchased other less expensive alternative products, and lost the opportunity to purchase other, true vitamin E products.

163.   Plaintiff and the Class are therefore entitled to recover all available remedies for said breach.

## COUNT SIX

### Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*

### Violation of Written Warranty

### *(brought on behalf of the Nationwide Class)*

164.   Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

165.   The MMWA, 15 U.S.C. §§ 2301, *et seq.*, creates a private cause of action for breach of "written warranty" as defined by that Act. 15 U.S.C. § 2301(6) and § 23 10(d)(l).

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

166.    The Products are "consumer products" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

167.    Plaintiff and Class members are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

168.    Defendant is an entity engaged in the business of making the Product available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

169.    Through its labeling, Defendant gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the Product. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

170.    Defendant provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Product by prominently affirming and promising in writing on the labeling of the Product that it is "Vitamin E skin oil." This affirmation of fact regarding the nature and quality of the Product constituted, and was intended to convey to purchasers, a written promise that the Product is "Vitamin E skin oil" as labeled. As such, this written promise and affirmation was part of the basis of Plaintiff's and Class members' bargains with Defendant in purchasing the Product.

171.    Defendant breached the written warranty to Plaintiff and the Class by failing to provide and supply a Product that was composed of "Vitamin E skin oil." Since the Product does not have the requisite qualities and character promised by Defendant's written warranty, the Product did not comply with Defendant's obligations under the written warranty to supply a "Vitamin E skin oil" product to Plaintiff and the Class.

172.    Plaintiff provided Defendant notice of, and a reasonable opportunity to cure, the defects in the Product and remedy the harm to Plaintiff and the Class. Defendant failed to take corrective action.

173.    Plaintiff and Class members were injured by Defendant's failure to

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

comply with its obligations under the written warranty, since Plaintiff and Class members paid for a Product that did not have the promised qualities and nature, did not receive a Product that was "Vitamin E skin oil." They accordingly paid a premium for the Product when they could have instead purchased other less expensive alternatives, and lost the opportunity to purchase other truly vitamin E products.

174.    Plaintiff and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

## COUNT SEVEN

### Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*
### Violation of Implied Warranty of Merchantability Under State Law
### *(brought on behalf of the Nationwide Class)*

175.    Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

176.    The MMWA creates a federal cause of action for breach of an implied warranty of merchantability. 15 U.S.C. § 2310(d)(1). Unlike a "written warranty," the term "implied warranty" under the MMWA is defined by reference to state law. 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.") Thus, the MMWA creates a federal cause of action for breach of an implied warranty of merchantability arising under state law.

177.    The elements of the breach of implied warranty of merchantability claim are met as described fully in Plaintiff's Fifth Cause of Action, ¶¶ 155-62. *Supra.*

178.    Additionally, the remaining requirements of the MMWA are met.

179.    The Product is a "consumer product" as defined in 15 U.S.C. § 2301(1),

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

35

as it constitutes tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

180.   Plaintiff and the members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Product for purposes other than resale.

181.   Defendant is an entity engaged in the business of making the Product available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

182.   Defendant knew of, and caused, the Product to state "Vitamin E" on its labels. This statement created an implied warranty of merchantability under state law in connection with the sales of the Product to Plaintiff and the Class. As such, Defendant was obligated under an implied warranty of merchantability, and, accordingly, Defendant is a "warrantor" as that term is defined at 15 U.S.C. § 2301(5).

183.   Defendant was provided notice and a reasonable opportunity to cure the defects in the Product and remedy the harm to Plaintiff and the Class, but failed to do so, as set forth above.

184.   Plaintiff and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time as provided in 15 U.S.C. § 2310(d) and as available under state law.

## **COUNT EIGHT**

**Restitution Based on Quasi-Contract/Unjust Enrichment**

***(brought on behalf of the Nationwide Class, in conjunction with the substantively similar common law of other states and the District of Columbia to the extent California common law is inapplicable to out-of-state Class members, or, in the alternative, on behalf of the California Class)***

185.   Plaintiff repeats and realleges the allegations set forth above, and incorporates the same as if set forth herein at length.

36

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

186.   Defendant's conduct in enticing Plaintiff and the Class to purchase the Product through the use of false and misleading "Vitamin E" labeling as described herein is unlawful because the "Vitamin E" statements contained on the Product's labels are untrue. Defendant took monies from Plaintiff and the Class for Products that were not primarily, if not exclusively, "Vitamin E" oil. Defendant has been unjustly enriched at the expense of Plaintiff and the Class as result of its unlawful conduct alleged herein, thereby creating a quasi-contractual obligation on Defendant to restore these ill-gotten gains to Plaintiff and the Class.

187.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and the Class are entitled to restitution in an amount to be proved at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment and relief on all Causes of Action as follows:

A.   An order enjoining Defendant's unlawful behavior to ensure statutory compliance as set forth herein;

B.   Statutory, monetary, and restitutionary damages; and

C.   Reasonable attorneys' fees and costs.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.

DATED: August 20, 2020                **CLARKSON LAW FIRM, P.C.**

                                        */s/ Ryan J. Clarkson*
                                        Ryan J. Clarkson, Esq.
                                        Matthew T. Theriault, Esq.
                                        Bahar Sodaify, Esq.
                                        Zachary T. Chrzan, Esq.

                                        *Attorneys for Plaintiff*

CLARKSON LAW FIRM, P.C.
9255 Sunset Blvd., Ste. 804
Los Angeles, CA 90069

37

FIRST AMENDED CLASS ACTION COMPLAINT