JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 20-4448-GW-KSx | Date | May 25, 2021 |
|---|---|---|---|
| Title | *Rochelle Varela v. Walmart, Inc.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - FINAL RULING ON DEFENDANT WALMART INC.'S MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT [38]

Attached hereto is the Court's Final Ruling. The Court GRANTS the motion to dismiss with prejudice.

: 

Initials of Preparer   JG

*Rochelle Varela v. Walmart Inc.*; Case No. 2:20-cv-04448
Final Ruling on Motion to Dismiss

# I. Background

At issue in this putative consumer class action is whether labeling a skincare oil product that contains Vitamin E as "Vitamin E skin oil" is misleading to a reasonable customer when it contains a mixture of oils (*i.e.* soybean, coconut, and lemon peel) in addition to what Plaintiff vaguely refers as as "Vitamin E oil." Defendant Walmart, Inc. sells the purportedly infringing product (the "Product") in bottles such as the one pictured below:[1]



*See* Second Amended Complaint ("2AC") ¶ 1. It is alleged that consumers purchase skin products containing Vitamin E because of its ability to "help rejuvenate human skin." *Id.* ¶ 9. Plaintiff contends that the Product "is not what it claims to be" because "Vitamin E oil" makes up only slightly less than a quarter of the product when measured by volume.[2] *Id.* ¶ 1.

---

[1] This lawsuit was filed on May 15, 2020 and sought certification of a class consisting of "All persons who purchased the Product in the United States or, alternatively, the State of California, for personal use and not for resale during the time period of four years prior to the filing of the complaint through the present." *See* Complaint ¶ 49, EFC No. 1. Presently, the class is limited to purchasers of the Product in California during the relevant period. *See* 2AC ¶ 74.

[2] Plaintiff alleges that "[l]ess than 25% of the Product is actually Vitamin E oil." *See* 2AC ¶ 1. However, as discussed below, Plaintiff appears to assume without support that, in the present context, there is such a substance as pure "Vitamin E oil" and that the amount of "Vitamin E oil" in the Product is less than 25% by volume.

A.  Vitamin E and Skin Products

Vitamin E is the collective name for a group of eight fat-soluble compounds.  *See* NATIONAL CENTER FOR BIOTECHNOLOGY INFORMATION. PUBCHEM: "Vitamin E," https://pubchem.ncbi.nlm.nih.gov/compound/Vitamin-E#section=Experimental-Properties § 9.1 ("NCBI PubChem") (last visited May 21, 2021).[3]  One of those compounds (*i.e.* alpha-tocopherol) is, according to the 2AC, "the most important lipid-soluble antioxidant."  *See* 2AC ¶ 8, n.2 which cites to Lester Packer *et al.*, *Molecular Mechanisms of Protective Effects of Vitamin E in Atherosclerosis*, THE JOURNAL OF NUTRITION (April 16, 2000), http://jn.nutrition.org/content/131/2/369S.full.pdf ("Packer Article").[4]  Alpha-tocopherol occurs naturally in plant oils (from which it is extracted) and in a synthetic form (*i.e.* tocopherol acetate).  *See* NCBI PubChem §§ 9.1, 10.1.  Pure alpha-tocopherol is a clear, yellowish oil.  *See* 2AC ¶ 8.

The 2AC avers that "Vitamin E oil is a powerful liquid antioxidant that can help rejuvenate human skin and overall health."  *Id.* ¶ 9.  However, the only citations for that assertion are to studies and articles which discuss Vitamin E in the context of dietary intake rather than as an ointment for topical application.  *Id.*, citing to Packer Article, NCBI PubChem,[5] and the U.S. Department of Health and Human Services, the National Institutes of Health, Office of Dietary Supplements, Vitamin E − Fact Sheet for Health Professionals ("NIH Fact Sheet") https://ods.od.nih.gov/factsheets/VitaminE-HealthProfessional.  The 2AC does not appear to allege (or reference evidence as to) what amount and/or purity of Vitamin E oil is required to have the intended (or even any) beneficial effect on the skin.

Unlike olive oil (which is a liquid fat obtained from the fruit of an olive tree by pressing whole olives and extracting the oil), there are no Vitamin E trees or fruits.  Rather, "Vitamin E oil

---

[3] The NCBI PubChem is cited in footnote 3 of the 2AC.  The NCBI PubChem is a public repository for information on chemical substances and their biological activities, launched in 2004 as a component of the Molecular Libraries Roadmap Initiatives of the United States National Institutes of Health, which in turn is part of the United States Department of Health and Human Services.  *See* https://pubmed.ncbi.nlm.nih.gov/26400175/ (last visited May 21, 2021).

Judicial notice is taken herein as to government publications specifically referenced in the 2AC.  *See* Federal Rules of Evidence 201; *Corrie v. Caterpillar*, 503 F.3d 974, 978 n.2 (9th Cir. 2007) (citing to *Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 (1961) (taking judicial notice of a government publication).

[4] Judicial notice is taken as to the Parker Article as a publication specifically referenced in the 2AC, and which is a document publicly available from a website that hosts scientific/academic journal articles.  *See Riva v. Pepsico, Inc.*, 82 F.Supp.3d 1045, 1049 n.1 (N.D. Cal. 2015).

[5] As stated in NCBI PubChem § 9.1, "Alpha-Tocopherol is the *orally* bioavailable alpha form of the naturally-occurring fat-soluble vitamin E, with potent antioxidant and cytoprotective activities.  [Emphasis added.]"

2

can be naturally extracted or synthetically created." *See* 2AC ¶ 10. "Vitamin E is naturally found in plant-based oils, nuts, seeds, vegetables, and fruits, including soybean oil." *Id.* ¶ 12. Citing to Siew Y. Quek, *et al.*, "Commercial extraction of Vitamin E from food sources," The Encyclopedia of Vitamin E (January 2007) ("Quek Article") and "Scientific Opinion of the Panel on Food Additives, Flavourings, Processing Aids and tocopherol and tocotrienols as sources for vitamin E," The EFSA Journal (2008) 640, 1-34 ("EFSA Journal"), Plaintiff alleges that:

> While soybean oil contains natural Vitamin E, the amount is miniscule and insignificant. The amount of Vitamin E found in soybean oil therefore does not function as a real or effective source of Vitamin E in skin beauty products, but rather as a filler oil.

*See* 2AC ¶ 13. However, the cited references in the 2AC either stand for the opposite proposition or otherwise do not support Plaintiff's averments. Specifically, the Quek Article states that:

> [E]ven soybean oil and wheat-germ oil, *which are considered to be the best sources of vitamin E*, contain only minute amounts of vitamin E. * * * * The vitamin E content of the FAD [fatty acid distillate] varies among different types of vegetable oils. Of the major vegetable oils, FAD from soybean oil contains the most vitamin E (10-14%), followed by those from maize, cottonseed, sunflower, rapeseed and groundnut, with 7-10, 6-10, 5-8, 4-7 and 2-5%, respectively . . . .

*See* Quek Article at 140-41 (emphasis added). The EFSA Journal reference does state that "common sources of commercial vitamin E such as soy, corn, cottonseed, canola and sunflower oil distillates contain little or no tocotrienols." *See* EFSA Journal (2008) 640, 7-34. However, at issue here is not tocotrienols but rather tocopherols; and, as to the latter, the EFSA Journal noted that there are 7.5 mg of alpha-tocopherol per 100 grams of soybean oil. *Id.*

"Vitamin E oil can also be synthetic." *See* 2AC ¶ 14. "The Vitamin E oil in the Product is a synthetic dl-alpha tocopheryl acetate." *Id.* ¶ 15.

The 2AC does not contain averments as to whether: (1) there is a standard definition of "Vitamin E oil" set either by the government or the industry; (2) the term "Vitamin E oil" for topical use can properly refer to both natural and/or synthetic Vitamin E; (3) there is an accepted meaning of the term "pure Vitamin E oil" and, if so, what exactly it is; (4) as to the Vitamin E (that comes from only natural sources such as palm oil, wheat germ oil, or soybean oil), there is any requirement that the label state the specific source(s) from which it is manufactured; and (5) as to Vitamin E that is synthetically produced, there are government or industry requirements that the oil(s) − into which it is placed − be identified, and/or that prohibit the types of oils into which it can be blended.

3

B.  <u>The Operative Complaint</u>

Plaintiff Rochelle Varela is a California resident who purchased the Product from a Walmart store back in December 2019.  *See* 2AC ¶ 51.  In purchasing the Product, Plaintiff relied on the front label stating that it was a "Vitamin E skin oil" ointment.  According to Plaintiff, had she known that the Product "was mostly comprised of cooking oils instead of Vitamin E oil, then she would not have purchased the Product."[6]  *Id.*  She alleges that the "Vitamin E Skin Oil" language on the front label is a material misrepresentation that is likely to deceive reasonable consumers and result in economic damages to consumers who pay a "price premium" based on the misrepresentation.[7]  *Id.* ¶¶ 7, 173.  Plaintiff contends that the phrase "Vitamin E Skin Oil" is so misleading *by itself* that the rear label − which clearly identifies the contents of the Product by descending weight/volume – fails to remedy any reasonable misunderstanding.

Plaintiff commenced this action against Walmart on behalf of herself and a California-wide class of similarly situated customers for violations of consumer protection laws.  *Id.* ¶ 54.  The 2AC raises the following causes of action: (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq*; (2) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq*; (3) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq*; (4) breach of express warranty; and (5) breach of implied warranty.

**II.  Legal Standard**

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A complaint may be dismissed for failure to state a claim for one of two reasons: (1) lack of a cognizable legal theory; or (2) insufficient facts under a cognizable legal theory.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

The court must construe the complaint in the light most favorable to the plaintiff, by accepting all allegations of material fact as true, and drawing all reasonable inferences from well-

---

[6] Apparently, Plaintiff was unaware that many of the natural sources of Vitamin E are oils which can also be used in cooking – *e.g.* canola, castor, coconut, corn, cottonseed, olive, palm, peanut, rice bran, safflower, sesame, soybean, sunflower, walnut and wheat germ oils.  *See* EFSA Journal (2008) 640, 7-34.

[7] While Plaintiff refers to paying a "premium price associated with promise of 'Vitamin E skin oil'" (*see* 2AC ¶ 173), she indicates that she paid approximately $7.00 for the Product.  *Id.* ¶¶ 51, 66.  However, she does not disclose the price of comparable "Vitamin E oil" ointments.  Thus, there is no evidence that Plaintiff paid a premium price or that she received less Vitamin E for her $7.00 than had she bought another brand.

pleaded factual allegations in favor of the plaintiff. *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002). The court is not required to accept as true legal conclusions couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion, the plaintiff must provide grounds demonstrating its entitlement to relief. *Twombly*, 550 U.S. at 555 (2007). Under the Supreme Court's decisions in *Twombly* and *Iqbal*, this requires that the complaint contains "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

### III. Discussion

Plaintiff's causes of action under California's consumer protection statutes are governed by the "reasonable consumer" standard. *See Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008); *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 506-07 (2003) ("[U]nless the advertisement targets a particular disadvantaged or vulnerable group, it is judged by the effect it would have on a reasonable consumer."). To plead UCL and FAL claims "based on false advertising or promotional practices," a plaintiff need "only to show that members of the public are likely to be deceived." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015). The same reasonable-consumer standard applies to CLRA claims (*see Williams*, 552 F.3d at 938); and the analysis of a CLRA claim is essentially the same as for those made under the UCL or FAL. *See In reConAgra Foods, Inc.*, 90 F.Supp.3d 919, 982 (C.D. Cal. 2015) ("Courts generally consider claims under the [UCL, FAL, and CLRA] together."). "[T]hese laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public." *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002), quoting *Leoni v. State Bar*, 39 Cal.3d 609, 626 (1985).

This Court is mindful of the Ninth Circuit's general rule that "whether a business practice is deceptive will *usually* be a question of fact not appropriate for decision on demurrer. [Emphasis added]." *Williams*, 552 F.3d at 938-39 ("The facts of this case . . . do not amount to the *rare* situation in which granting a motion to dismiss is appropriate. [Emphasis added]"). However, "usually" and "rare" do not connote "never"[8] and there have been an ever-increasing number of

---

[8] As observed in *Hill v. Roll Int'l Corp.*, 195 Cal.App.4th 1295, 1300-01 (2011):

5

cases in which a motion to dismiss was found to be appropriately granted where the issue was whether a product label would be deceptive or misleading to a reasonable consumer. *See, e.g., Becerra v. Dr. Pepper/Seven Up, Inc.,* 945 F.3d 1225, 1228-31 (9th Cir. 2019); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965-66 (9th Cir. 2016); *Clark v. Westbrae Natural, Inc.*, No. 20-cv-03221-JSC, 2020 WL 7043879 (N.D. Cal. Dec. 1, 2020); *Cheslow v. Ghirardelli Chocolate Co.*, 472 F.Supp.3d 686 (N.D. Cal. 2020). Further, considering a motion to dismiss to determine whether allegations amount to a "plausible" claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 669.[9]

Plaintiff alleges that Walmart engaged in a misleading sales practice by labeling the Product as "Vitamin E Skin Oil." 2AC ¶ 1. She claims the label is misleading because "reasonable consumers believe that the primary or exclusive oil in the Product is Vitamin E oil" when in fact Vitamin E oil – alpha-tocopherol (either in its naturally-occurring or synthetic (acetate) form) – makes up less than a quarter of the Product by volume. *Id.* ¶ 1.

However, the Product's front label prominently discloses the actual quantity of Vitamin E in the Product (*i.e.* 24,000 IU[10] in 3 fluid ounces) and indicates that the Product is not pure Vitamin

---

"[t]he standard to be used in evaluating whether an advertisement is deceptive under the UCL is purely a question of law …." (*Lavie v. Procter & Gamble Co.* (2003) 105 Cal.App.4th 496, 503). Other courts have stated that whether a business practice is fraudulent, deceptive, or unfair is generally a question of fact requiring the consideration and weighing of evidence, and usually cannot be decided on demurrer. (*Linear Technology Corp. v. Applied Materials, Inc.* (2007) 152 Cal.App.4th 115, 134-135; *McKell v. Washington Mutual, Inc*. (2006) 142 Cal.App.4th 1457, 1472; *Williams v. Gerber Products Co.* (9th Cir. 2008) 552 F.3d 934, 938-939.) This is not an irreconcilable conflict: generally and usually do not mean invariably, and a demurrer must be sustained when the assumed facts show lack of a valid claim.

[9] As observed in *Cheslow:*

The reasonable consumer test requires more than a mere possibility that defendant's product "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Lavie v. Procter & Gamble Co.*, 105 Cal.App.4th 496, 508 (2003). Rather, the test requires a probability "that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Id.*

472 F.Supp.3d at 692.

[10] "IU" stands for "International Unit" and "is a measure of biological activity used by international scientists, and it is different for each substance." *See* 2AC ¶¶ 16-17; *see also* https://en.wikipedia.org/wiki/International_unit (last visited May 21, 2021) ("In pharmacology, the international unit (IU) is a unit of measurement for the amount of a substance; the mass or volume that constitutes one international unit varies based on which substance is being measured, and the variance is based on the biological activity or effect, for the purpose of easier comparison across substances. International units are used to quantify vitamins, hormones, some medications, vaccines, blood products, and similar biologically active substances.").

The amount of Vitamin E in commodities has, until recently, commonly been provided in IU measurements. *See, e.g., Kaufman v. CVS Caremark Corp.,* 836 F.3d 88, 90 (1st Cir. 2016); *Dachauer v. NBTY,*

E oil, but rather is made "with Keratin." *See id.* ¶ 1.  Nevertheless, Plaintiff alleges that neither of those notifications adequately corrects the front label's misleading nature.

As to the Product's explicit delineation of the amount of Vitamin E which it contains in the form of IU measurements, Plaintiff argues that "[m]ost consumers . . . are incapable of performing at the point of purchase . . . the college-level calculations necessary to determine that 24,000 IU of Vitamin E oil in a three-fluid ounce bottle translates to less than a paltry 25% Vitamin E oil." *Id.* ¶ 4.  Plaintiff's contention on this point is simply based upon an incorrect premise and also fails on other grounds.  As stated in the NIH Fact Sheet at 2 and in the FDA regulations (*see* footnote 10, *supra*), the FDA had mandated (until January 2020) that manufacturers of Vitamin E goods use IUs as the measurement of the amount of Vitamin E in their merchandise.  Thus, without the IU figure, a consumer would not be able to tell how much Vitamin E was actually in the product.  For example, there is no indication of how much Vitamin E is in an ounce of a liquid which is called "Vitamin E oil," even if it is labelled "pure Vitamin E oil."[11]  By including the IU designation, a consumer can conduct a quick comparison using elementary school math to determine how much Vitamin E is contained in various manufacturers' products.  All of the examples of Vitamin E merchandise depicted in the 2AC (from Walmart and its various competitors) utilized the IU measurement on their labels to state the amount of Vitamin E in the product.  *See* 2AC at ¶¶ 1, 37, 38.  A comparison of the amount of Vitamin E in a particular brand can easily be made in less than the 13 seconds that Plaintiff claims is the amount of time an average

---

*Inc.*, No. 16-cv-00216-VC, 2016 WL 3176612, at *1 (N.D. Cal. June 3, 2016).  The federal Food and Drug Administration ("FDA") had, until January 2020, *required* the use of International Units or IUs in designating the quantities of Vitamins A, D and E on the Nutrition and Supplemental Facts labels.  *See* Food Labeling: Revision of the Nutrition and Supplement Facts Labels, 81 Fed. Reg. 33742, 33912-15 (May 27, 2016).

[11] Thus, Plaintiff's assertion − that "consumers . . . are incapable of performing at the point of purchase . . . the calculations necessary to determine that 24,000 IU of Vitamin E oil in a three-fluid ounce bottle translates to less than a paltry 25% Vitamin E oil" − is simply a non-sequitur and absolutely incorrect.  First, Plaintiff's calculations in her 2AC at ¶ 18 are based on faulty presumptions.  She appears to be applying the table set forth in the NIH Fact Sheet for converting IUs of Vitamin E into milligrams ("mg").  As stated therein: "To convert from IU to mg: 1 IU of the natural form is equivalent to 0.67 mg of alpha-tocopherol.  1 IU of the synthetic form is equivalent to 0.45 mg of alpha-tocopherol." *Id.* at 3.  However, the conversion that the NIH Fact Sheet is performing (and, hence, the Plaintiff as well) goes to the *weight* of the Vitamin E and not to its *volume* in an oil.  In her calculation, Plaintiff assumes that 1 mg of Vitamin E equals 1 milliliter ("ml") of Vitamin E oil.  *See* 2AC at ¶ 18.  There is no basis for that assumption.  While 1 mg of water will equal 1 ml of water at standard temperature and pressure, there is no indication that Vitamin E in oil would have that same equivalency.  Further, one would have to know (which the Plaintiff does not even consider) the density and concentration of the substance in the fluid and the properties of that fluid versus water.  Thus, Plaintiff's assertion that her calculations show that Defendant's Product contains less than 25% Vitamin E oil is unsupported and meaningless.

7

consumer spends to make an in-store purchasing decision.¹² *Id.* ¶ 2. In sum, the placement of the amount of Vitamin E in IUs on the front of the Product: (1) was required by the FDA (during most of the period covered by the proposed class action), (2) was an accurate measurement for the indicated substance, and (3) cannot be held to be a misrepresentation or misleading. Plaintiff's ignorance of the meaning of IUs and the applicable government regulations (which at the time required the utilization of IUs as the measurement of the amount of Vitamin E in a product) cannot serve as the basis for what a reasonable consumer would know or expect.

As to the Product's clear indication that it is not pure "Vitamin E oil" because it contains keratin, Plaintiff asserts that "reasonable consumers do not interpret . . . 'with keratin' to mean the Product contains 'over 75% cheap cooking oils like soybean oil.'" *Id.* ¶ 5. Plaintiff contends that, instead of "Vitamin E skin oil," an appropriate label would be "Vitamin E oil *blend*." *See* Opp. at 6. She claims that is what other skincare products, such as the ones pictured below, have employed.



*See* 2AC ¶ 38. However, Plaintiff's argument is unavailing.

---

¹² The label of the Walmart Product states that it has 24,000 IU in a 3 fluid-ounce bottle, or 8,000 IU per ounce. *See* 2AC ¶ 1. Daylogic has 28,000 IU in a 1 fluid ounce bottle, or 28,000 IU per ounce. *Id.* ¶ 37. Sundown Naturals has 70,000 IU in a 2.5 fluid ounce bottle, or 28,000 IU per ounce. *Id.* Beauty 360 has 28,000 IU in a 1 fluid ounce bottle, or 28,000 IU per ounce. *Id.* Trader Joe's has 24,000 IU in a 4 fluid-ounce bottle, or 6,000 IU per ounce. *Id.* ¶ 38. The BOS Essentials' label states that it has 36,400 IU in "Net Wt. 1 oz." but does not indicate the fluid ounces. *Id.* ¶ 37. Thus, a comparison cannot be made without knowing the fluid ounce size of the BOS Essential bottle, although the purchaser is informed that the bottle contains 36,400 IU of Vitamin E.

First, Plaintiff appears to assume that there is a standard meaning for the term "Vitamin E oil," at least in the context of its use as a topical ointment. However, as discussed above, she has not included any averments to authenticate that presumption. Thus, she has not established that "Vitamin E oil" cannot mean "Vitamin E in soybean and/or other oils." Second, Plaintiff's reference to "over 75% cheap cooking oils like soybean oil" rests upon: (1) her baseless calculation as to the amount of Vitamin E oil in the Product (*see* footnote 11, *supra*), and (2) her failure to understand that, in the context of commercial extraction of natural Vitamin E from food sources, soybean oil is "considered to be [one of] the best sources of Vitamin E." *See* Quek Article at 140. Third, the Court would observe that referring to the Product as a "Vitamin E oil blend" (as suggested by Plaintiff) would not inform customers that the Product purportedly contains less than 25% Vitamin E oil (assuming that percentage was actually the case) or that it is comprised of a mixture of soybean, Vitamin E, coconut and lemon peel oils. To ascertain the various oils, the customer would still have to look at the rear or side label. Here, the Product's rear/side label includes the following information:



*See* Exhibit 1 to Declaration of Viral Shah in Support of Defendant Walmart Inc.'s Motion to Dismiss, ECF No. 38-1.[13] Fourth, given the fact that that Walmart informed consumers that its Vitamin E Skin Oil was, at a minimum, a combination of Vitamin E oil and keratin they should

---

[13] A court in considering a motion to dismiss in a case alleging misleading packaging can take judicial notice of the entire labelling of the product that is referenced in the complaint. *See Przybylak v. Bissell Better Life LLC,* No. CV-19-2038-PA-(GJSx), 2019 WL 8060076, at *4, n.2 (C.D. Cal. July 19, 2019).

have already known that the Product was a blend of an oil containing Vitamin E and least one other substance.

Plaintiff has not met *Iqbal*'s plausibility requirement. There is no affirmative misrepresentation here because the Product is literally a "Vitamin E skin oil" − *i.e.* it is an ointment that has oil which contains Vitamin E that is intended to provide skincare benefits. And Plaintiff has not plausibly alleged that the "Vitamin E Skin Oil . . . with Keratin" label – despite being literally true – is misleading because a reasonable consumer would read it and invariably conclude that "the primary or exclusive oil in the Product is Vitamin E oil." *See* 2AC ¶ 3. First, no reasonable consumer would believe that the Product *only* contains Vitamin E oil, because the front label clearly states that the Product includes keratin.[14] Therefore, a reasonable consumer who is interested in the proportions of the ingredients in the Product would be expected to look at any rear or side label on the bottle. Second, the rear/side label herein lists the Product's ingredients, in order, which are: "Glycine Soja (Soybean) Oil, Vitamin E (dl-Alpha Tocopheryl Acetate), Isostearic Acid, Sorbitan Oleate, Cocoyl Hydrolyzed Keratin, Cocos Nucifera (Coconut) Oil, Citrus Limon (Lemon) Peel Oil." Thus, the consumer is informed of the various components of the Product in their respective portions. Third, the label correctly indicates the amount of Vitamin E in the container in the form of "IUs," which was a recognized and accepted method of such delineation. *See* footnote 10, *supra*. While Plaintiff argues (without any support) that most consumers would not know what IUs are or how to convert IUs into a measurement of the percentage of Vitamin E oil that the Product contains,[15] even accepting those assertions as being true, one cannot conclude that a reasonable consumer − when presented with the IU information

---

[14] The 2AC does not contain any explanation of what keratin is or what a reasonable consumer would expect it to be. After the 2AC and the motion to dismiss were filed, Plaintiff offered to provide additional factual allegations indicating that keratin is "a fibrous protein taken from hair, wool, feathers or nails" that "is added to skincare products . . . in a soluble powder form known as hydrolyzed keratin." *See* Offer of Proof at 1, ECF No. 48. However, this Court in the initial tentative ruling already noted that "As defined in *Webster's New World Dictionary, Third College Edition* 739 (1988), 'keratin' is 'a tough, fibrous, insoluble protein forming the principle matter of hair, nails, horn, etc.'" *See* Tentative Ruling n.9, ECF No. 44.

[15] A further problem with Plaintiff's argument as to the insufficiency of Walmart's employment of the IU measurement of the amount of Vitamin E in its Product is that − as noted in footnote 10, *supra* − the FDA explicitly required the use of IUs as a means of comparing the *effective* quantity of a substance (such as Vitamin E) in competing goods. *See, e.g.,* footnote 17, *infra*, where one might have two Vitamin E products of the same size (*e.g.* one fluid ounce) and yet one would have more Vitamin E than the other (*e.g.*, one seller's one ounce bottle of Vitamin E oil could contain 36,400 IUs of Vitamin E whereas another seller's one ounce bottle might only have 28,000 IUs of Vitamin E).

(and notice that the Product contains keratin) plainly on the front label of the Product − would simply ignore those disclosures and reach the erroneous conclusion that the Product consisted purely or mostly of "Vitamin E oil" and no other possible oils which naturally contain Vitamin E such as soybean, palm or olive oils. In that situation, reasonable consumers would be expected to look further at the rear/side label (approximately one inch away) which would inform them that the Product was composed of many ingredients with the largest proportion being soybean oil − as the ingredients must be listed in descending order (usually by weight). *See Zotos International, Inc. v. Young*, 830 F.2d 350, 351 (D.C. Cir. 1987). Fifth, and finally, as noted above, there is no evidence of a government or industry definition or formula for "Vitamin E oil." Hence, there is no basis for a reasonable consumer to: (1) know exactly and correctly what "Vitamin E oil" is (let alone "Vitamin E Skin Oil;" and (2) conclude with any certainty that Vitamin E oil cannot include any other oils (such as soybean or coconut).

In her opposition to the motion, Plaintiff repeatedly cites to a state court case which found that a plaintiff had plausibly pled that salad dressings with labels such as "Made with Extra Virgin Olive Oil" were misleading because the dressings did not contain only, or even mostly, olive oil. The plaintiffs there were "upset when they discovered that each dressing contained significantly more vegetable or canola oil than olive oil." *See Skinner v. Ken's Foods, Inc.*, 53 Cal.App.5th 938, 949 (2020). According to Plaintiff, her situation is analogous: she and other consumers are upset that the Product contains significantly more soybean oil than pure Vitamin E oil. However, *Skinner* is very different from the present action because the front labels therein did not state how much olive oil was in the product and it was held that consumers had no idea that the bottle of dressing contained "literally only drops of olive oil."[16] ECF No. 40-1 at 46. Here, the Product's

---

[16] In two cases with interesting variations of the *Skinner* situation, the courts granted the motions to dismiss. In *Jessani v. Monini North America, Inc.*, 744 F. App'x 18 (2nd Cir. 2018), plaintiffs brought a class action against the seller of "truffle-flavored" olive oil because said product contained no truffles. The court held that, because truffles are both prohibitively expensive and highly perishable, a reasonable consumer would not expect that the defendant's modestly priced, mass-produced olive oil was in fact made with one of the most expensive foods in the world. *Id.* at 19-20. Moreover, any suggestion that the product included actual truffles (merely because of the inclusion of the word "truffle-flavored" on the label) was dispelled by the product's ingredient list which contained no reference to truffles. *Id.*

In *Devane v. L'Oréal USA, Inc.*, No. 19 Civ. 4362 (GBD), 2020 WL 5518484 (S.D. N.Y. Sept. 14, 2020), plaintiff brought a class action against the seller of a line of hair products with the name "EverSleek Keratin Caring" claiming that the label and marketing of the products mislead consumers into believing that they contained keratin when they did not. The defendant pointed out that, aside from the brand name: (1) the front labels read, in relevant part, "Keratin Caring" and "100% vegan;" (2) the bottles described the products' function as "gently cleanse[ ] chemically straightened hair while caring for the essential protein and keratin that is found in the hair;" and (3) the ingredient list on the back of the bottles did not mention keratin. *Id.* at *1. The court granted the motion to dismiss

11

front label discloses the *actual* amount of Vitamin E in the Product (*i.e.* 24,000 IU). *Skinner* is also distinguishable because it involved olive oil, which is recognized as a distinct substance from the other oils which the defendant had included in its dressing. As discussed above, "Vitamin E oil" does not appear to have a standard definition; and, indeed, a large portion of natural Vitamin E products are derived from vegetable oils such as soybean oil. *See* Quek Article at 140-41. And just in case the words "Vitamin E oil" could lead some consumers to believe the Product contained only alpha-tocopherol oil, Walmart used the phrase "Vitamin E Skin Oil" on the front label and informed the buying public that the Product included keratin with is neither Vitamin E or even an oil.

Plaintiff's claim that "reasonable consumers do not interpret 'Vitamin E oil' any differently than 'Vitamin E skin oil'" is undercut by industry practice. *See* 2AC ¶ 6. As referenced by Plaintiff herself, manufacturers whose skincare products purportedly consist only of Vitamin E oil make it a point to either: (1) use the word "pure" or (2) state plainly that the product is "Vitamin E oil."



---

finding that: (1) any potential confusion arising from the reference to "keratin" in the brand name ("EverSleek Keratin Caring") was dispelled by the stated function also prominently displayed on the container that the product was meant to care for the essential protein and keratin that was found in the consumer's hair; (2) the statement (also on the front of the product) that it was 100% vegan would preclude any reasonable conclusion as to the presence of keratin in the product because keratin only comes from parts of animals and humans (clearly not vegan); and (3) the fact that keratin was not included in the ingredient list further informed a reasonable consumer as to the absence of keratin in the product.

*See id.* ¶ 37 (labels stating ""Vitamin E Oil" and "Pure Vitamin E Moisturizing Oil"). Further, it is somewhat ironic that all of the examples of products in the 2AC (which Plaintiff describes as "contain[ing] only Vitamin E oil . . . and are accurately labeled by competitors") conspicuously state on their front labels the amount of Vitamin E contained in the bottles using IU measurements.[17]  *See* 2AC ¶ 37.  Thus, while Plaintiff argues that the reasonable consumer would not know the significance of the IU designation on the Product's front label, it appears that, at the time the Complaint was filed in this lawsuit, all of the sellers of Vitamin E oil were designating the amount of Vitamin E in their products by using the IU measurement.

Plaintiff also cites to *Cesta v. Trader Joe's Co.*, 18-cv-00895-DMG, 2018 WL 6075352 (C.D. Cal. Aug. 28, 2018), involving Trader Joe's Vitamin E oil product.  There are significant differences between that case and the present one.  The front label of Trader Joe's product: (1) apparently only stated that it was "Vitamin E Oil;" (2) did not reference to any other substances in the ointment; and (3) did not state the amount of Vitamin E in IUs in the product (although it did so on the back label).  The court in *Cesta*, therefore, found the front label to be misleading and that the list of ingredients on the back label (which did correctly state all of the product's components) did not overcome the initial misleading representation.  *Id.* at *6.  For the reasons stated above, this case is factually distinguishable from *Cesta*.[18]  Additionally, the *Cesta* court recognized that, had the front label merely been ambiguous as to the contents of the product, it could give rise to an "obligation" for the reasonable consumer to consult the ingredient list on the rear of the package

---

[17] Indeed, without the use of the IU measurements, the consumer would not be aware that the 1 oz. bottle of the BOS Essentials Vitamin E Oil contains 36,400 IUs of Vitamin E whereas the 1 fl. oz. bottle of the Daylogic Vitamin E Oil contains only 28,000 IUs of Vitamin E.  *Id.*

[18] The court in *Cesta* also noted the complaint's characterization of soybean oil (the largest component defendant's product) as being a "cheaper, filler oil" that is unhealthy and does not have the same sought-after benefits as Vitamin E oil.  *Id.* at *1.  But in the reference materials that Plaintiff here has included in her current operative complaint, it is specifically recognized that soybean oil and coconut oil are *natural* sources of Vitamin E.  *See* Packer Article; NCBI PubChem § 13.2.2; NIH Fact Sheet.

Additionally, the Court would take judicial notice (not for the truth of the underlying statements, but only for the fact that such representations are made to the public) of advertisements from various high-end skin cream manufacturers that tout the benefits of products made from soybeans for healthy skin care.  *See* Aveeno, "Skin Science: Why soy skincare will be your next favorite thing," https://www.aveeno.com/skin-mind-balance/why-soy-skincare-will-be-your-next-favorite-thing (last visited May 21, 2021); Nivea, "Soy Extract, Healthy Protein for Our Skin," https://www.nivea.com.au/advice/skin/soy-extract (last visited May 21, 2021) ("Soy extract is derived from soybeans and has long been considered the anti-ageing jewel from China, going back hundreds of years . . . . Anti-ageing products also contain soy extract for its powerful antioxidant and anti-inflammatory properties to help fight the production of free radicals in the body.").

13

to remedy any ambiguity. *Id.*

Plaintiff's claim boils down to her objecting to Walmart's using the words "Vitamin E Skin Oil . . . with Keratin" on the front label of its skincare product that contains some (but not exclusively) "Vitamin E oil." However, Plaintiff does not (and cannot) argue that the label is literally false.

Even if there were *arguendo* some ambiguity about the meaning of "Vitamin E Skin Oil . . . with Keratin," that situation still would not constitute an actionable misrepresentation. The front label accurately states how much Vitamin E is in the Product using a form of measurement authorized by the FDA and utilized by the industry. It also tells consumers that the Product contains keratin − originally a tough, fibrous, insoluable protein from which animal hairs, skin, nails, and horns are composed. This wipes away the notion that the Product consists purely of Vitamin E oil.[19] Furthermore, there is an accurate full ingredient list is located on the rear/side label of the bottle.

It is true that a reasonable consumer is not "expected to look beyond *misleading* representations on the front of the box to discover the truth in small print on the side of the box label." *Williams*, 552 F.3d at 939 (emphasis added). However, as this Court has previously observed, *Williams* "merely bars a defendant from correcting an affirmative misrepresentation on the front packaging through a back of the box ingredient list." *Red v. Kraft Foods, Inc.*, 10-cv-01028-GW, 2012 WL 5504011, at *3 (C.D. Cal. Oct. 24, 2012).[20] The Court does not find that "Vitamin E Skin Oil" is an affirmative misrepresentation (or even a true but misleading description of the ingredients of the Product) that precludes consideration of the rear/side label in evaluating

---

[19] Plaintiff argues that whether there is keratin in the Product is "irrelevant to Plaintiff's and reasonable consumers' expectation that the primary or exclusive *oil* in the Product is Vitamin E oil." Opp. at 4. The Court disagrees. The threshold question is whether the contested front label is misleading if the Product contains *anything* other than "Vitamin E oil" (alpha-tocopherol). If the answer is "no," then it does not matter whether the additional ingredient is itself an oil or not: the label is still not misleading.

[20] In *Workman v. Plum, Inc.*, 141 F.Supp.3d 1032 (N.D. Cal. 2015), the plaintiff alleged that the fronts of defendant's food packages for toddlers were misleading because they typically depicted and named four different ingredients from four different food groups. However, those ingredients were never the sole components of the packages and, in fact, the most prominent components (*i.e.* apple, pear and banana purees) were not necessarily depicted on the covers. *Id.* at 1033-34. The court granted the motion to dismiss finding that the packages merely showed the featured ingredients and that no reasonable consumer would expect that each of the four items depicted on the cover to constitute an exact 25% of the product. *Id.* at 1036. Further, the court noted that the *Williams* decision on which the plaintiff primarily relied was issued shortly before the Supreme Court "significantly changed" the pleading requirements in *Iqbal*. *Id.*

14

how a reasonable consumer would perceive the Product when the front label also includes a statement as to the accurate amount of Vitamin E in the bottle and notice that the ointment contains at least one other ingredient.[21]

It is clear that Plaintiff does not want her Vitamin E ointment to contain a mixture with a large proportion of soybean oil. She is certainly entitled to that preference. However, she cannot transform her preference into a claim of product misrepresentation without a factual basis for making her accusation.

For all these reasons, the Court again finds that Plaintiff has not pled any plausible claims based on misrepresentations under the applicable consumer protection laws cited above. Her warranty causes of action, which are based on the same "Vitamin E Skin Oil" label, fail for the same reasons.

**IV. Second Offer of Proof – Dismissal with Prejudice**

At this point, the Plaintiff has submitted three versions of the complaint (*see* ECF Nos. 1, 20, 37) and two offers of proof which attempted to address insufficiencies in her pleadings referenced by the Court in its prior tentative rulings granting Defendant's motions to dismiss (*see* ECF Nos. 48, 57). The question now arises as to whether the dismissal here should be with or without prejudice.

In her most recent offer of proof – *i.e.* Second Offer of Proof ("SOP"), ECF No. 57 − filed after the Court issued its tentative ruling dismissing the 2AC but allowing Plaintiff to provide a further explanation of her case, Plaintiff: (1) repeats her argument, without additional factual support, that a reasonable consumer would not expect that a product labelled "Vitamin E oil" would include soybean oil as a "diluent" (even though soybean oil is a natural source of Vitamin E); (2) asserts that she could provide testimony from "consultants" that the relative volume of

---

[21] Plaintiff asserts that a very recent ruling from a California trial court just denied defendant Whole Foods' motion to dismiss a similar false advertising claim, observing that "whether consumers are deceived by a product's label is an appropriate fact question at the pleadings stage." *See* Opp. at 7-8, citing to *Lopez v. Whole Foods*, *et al.*, Case No. 56-2019-00534837 (Ventura Sup. Ct., October 1, 2020). According to Plaintiff, the challenged labeling there also simply stated "Vitamin E Skin Oil" with a disclosure about the absolute quantity of Vitamin E oil in the product (given in IUs).

There are two reasons why the Court is not persuaded by that reference. First, it was only a minute order without any explanation of the court's ruling. While Plaintiff's counsel was also involved in that matter and was before that court when it issued the minute order, they unfortunately do not have any written record of the court's reasoning for its order. Second, even if the ruling is as Plaintiff described, the Court finds that the "with Keratin" statement on the Product's front label provides sufficient notice to prevent the "Vitamin E Skin Oil" label from being an affirmative misrepresentation that the Product contains only Vitamin E oil and ultimately to prevent it from being misleading in that respect.

15

Vitamin E oil in each of Defendant's bottles is estimated to be only ten percent; (3) contends that the lack of an industry or government definition of "Vitamin E oil" does not render "non-existent" the consumers' expectation of Vitamin E oil in the product; and (4) argues that the other failings in regards to her contentions, as pointed out by the Court in its tentative ruling, do not dispel her claim that the Defendant's label is deceptive. *Id.* However, all of Plaintiff's arguments fail both intrinsically and in their particulars.

In general, Plaintiff's contentions in regards to an ointment that is called "Vitamin E Oil" are not on point for the basic reason that Defendant has not labelled its Product as being "pure Vitamin E Oil" or even "Vitamin E Oil." Rather, on the front label of the container, the Product is designated as "Vitamin E Skin Oil" along with an accurate statement of the actual amount of Vitamin E contained in the bottle using the then-required government measurement of that substance. Moreover, the front label also prominently notified consumers that the Product contains keratin which is a tough, fibrous and insoluble protein found in animal skin, hair, horns, feathers and nails. That latter disclosure precludes a reasonable consumer from believing that the Product contains only Vitamin E oil.

As to Plaintiff's assertion that a reasonable consumer would not expect that a product labelled "Vitamin E Oil" would include soybean oil as a diluent, as noted above, the Product here is not labelled "Vitamin E Oil." But further, Plaintiff has conceded in the SOP that there is no industry or government definition of "Vitamin E oil." *Id.* at 3. Thus, there is no basis for determining what a "reasonable consumer" would expect vis-à-vis a substance designated as "Vitamin E Skin Oil." Indeed, Vitamin E is *not* an oil. It is the collective name for a group of fat-soluble compounds (*see* NIH Fact Sheet). Further, soybean oil is considered one of the best sources for natural Vitamin E (*see* Quick Article at 140-41), and certain manufacturers of skin cream products have advertised the benefits (including antioxidant advantages) of applications made from soybeans (*see* footnote 18, *supra*).

While certain consumers of ointments containing Vitamin E might prefer that their unguents not include soybean oil, there is no indication that said preference is uniformly widespread and/or founded on science, custom, or anything other than purely personal taste. Thus, there is no ground for finding that an ointment labelled "Vitamin E Skin Oil . . . with Keratin" is false or misleading because it contains (in addition to 24,000 IUs of Vitamin E as stated) soybean oil. Those particular consumers who do not wish their Vitamin E lotions to contain any soybean

16

(or other types of oils) must look to the ingredient list on the rear/side label, which will correctly advise them of the contents of the Product.

Lastly, as to Plaintiff's offer of submissions from consultants who would state that the amount of Vitamin E oil in the Product was less than ten percent by volume, that proffer does not remedy the deficiencies of Plaintiff's pleadings. The Product already accurately discloses the amount of Vitamin E contained in the bottle. Additionally, because there is no government or industry definition of "Vitamin E oil," it is rather unclear what exactly Plaintiff's consultants will be measuring.

In sum, Plaintiff's SOP does not provide grounds for allowing Plaintiff yet another opportunity to amend her complaint.

## V. Conclusion

Based on the foregoing discussion, the Court **GRANTS** the motion to dismiss with prejudice.